## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | |
| STATE OF ILLINOIS; JB PRITZKER, the Governor of Illinois in his official capacity; KWAME RAOUL, Attorney General for the State of Illinois in his official capacity; BOARD OF TRUSTEES OF SOUTHERN ILLINOIS UNIVERSITY; BOARD OF TRUSTEES OF REND LAKE COLLEGE; BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS; BOARD OF TRUSTEES OF CHICAGO STATE UNIVERSITY; BOARD OF TRUSTEES OF EASTERN ILLINOIS UNIVERSITY; BOARD OF TRUSTEES OF ILLINOIS STATE UNIVERSITY; BOARD OF TRUSTEES OF NORTHEASTERN ILLINOIS UNIVERSITY; ILLINOIS STUDENT ASSISTANCE COMMISSION; ILLINOIS DREAM FUND COMMISSION. | No. 3:25-cv-1691 <br><br> **COMPLAINT** |
| *Defendants*. | |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

### INTRODUCTION

1.      Federal law prohibits providing aliens not lawfully present in the United States with any postsecondary education benefit on the basis of residency unless that benefit is also available to United States citizens and nationals regardless of their residency. *See* 8 U.S.C. § 1623(a). That prohibition is categorical, *id.*, yet Illinois insists on flagrantly violating it. This Court should put an end to this discrimination against Americans that is a blatant and ongoing violation of federal law, by enjoining the enforcement of Illinois State Higher Education laws that unlawfully permit

the grant of in-state tuition, grants, scholarships, and other benefits to aliens not lawfully present in the United States when such benefits are not available to U.S. citizens or nationals with residences outside Illinois. These provisions are preempted by federal law and are thus unlawful. *See* 110 Illinois Compiled Statutes (ILCS) §§ 305/7e-5(a)(5), (a-5); 520/8d-5(a)(5), (a-5); 660/5-88(a)(5), (a-5); 665/10-88(a)(5), (a-5); 675/20-88(a)(5), (a-5); 680/25-88(a)(5), (a-5)[1]; 805/6-4a(a)(5); 110 ILCS § 986/; 110 ILCS § 947/67; *see also* U.S. Const. art. VI, cl. 2; *Arizona v. United States*, 567 U.S. 387, 399 (2012) ("There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision.").

2.    Illinois law classifies aliens who are not lawfully present in the United States as "residents" of Illinois under certain conditions, making them eligible for reduced tuition for public state colleges and other post-secondary education benefits, while U.S. citizens and nationals from other states, who do not meet the residency requirements, must pay higher out-of-state tuition rates and do not qualify for certain other benefits. This discriminatory treatment in favor of aliens not lawfully present in the United States over U.S. citizens and nationals is squarely prohibited and preempted by federal law. Section 1623(a) of Title 8 of the United States Code provides that "an alien who is not lawfully present in the United States *shall not be* eligible on the basis of residence within a State … for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit … without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added). The challenged Illinois statutes, as applied to aliens not lawfully present in the United States, thus violate the Supremacy Clause of the United

---

[1] Parallel in-state tuition provisions are also found at 110 ILCS § 670/15-88(a)(5), (a-5) (Governors State University), 110 ILCS §685/30-88(a)(5), (a-5) (Northern Illinois University), and 110 ILCS §690/35-88(a)(5), (a-5) (Western Illinois University) but those universities do not enforce those provisions and instead charge the same tuition to in-state residents as they do to U.S. citizens and nationals of other states.

States Constitution. This Court should declare that Illinois' laws, as applied to aliens not lawfully present in the United States, are preempted and should permanently enjoin their enforcement.

### JURISDICTION AND VENUE

3.      The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

4.      Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because at least one defendant resides in this district and all defendants are residents of the State.

5.      The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2, as well as 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

### PARTIES

6.      Plaintiff, the United States of America, regulates immigration under its constitutional and statutory authorities, and it enforces federal immigration laws through its Executive agencies, including the Department of Justice and the Department of Homeland Security ("DHS"), as well as DHS component agencies, including U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, and U.S. Customs and Border Protection.

7.      Defendant State of Illinois is a state of the United States.

8.      Defendant JB Pritzker is the Governor of Illinois and is sued in his official capacity. Under the Illinois Constitution, the Governor of Illinois has "the supreme executive power, and shall be responsible for the faithful execution of the laws." Illinois Constitution, Article V, Section 8.

9.      Defendant Kwame Raoul is the Attorney General for the State of Illinois and is sued in his official capacity. The Attorney General of Illinois is the state's chief legal officer. The Office

of the Attorney General has locations within the Southern District of Illinois, including in Belleville, IL and Carbondale, IL.

10.    Defendant Board of Trustees of Southern Illinois University was created by the Illinois General Assembly for the purpose of operating, managing, controlling, and maintaining Southern Illinois University. The Board of Trustees is charged with fixing rates for tuition at Southern Illinois University, as well as determining Illinois residency for the purpose of charging in-state tuition or providing other educational benefits. *See* 110 ILCS §§ 520/8, 8d-5. Southern Illinois University has a number of locations, including East Saint Louis, IL, Edwardsville, IL, and Carbondale, IL.

11.    Defendant Board of Trustees of Rend Lake College is a state entity charged with governing and managing Red Lake College, including setting tuition rates and determining Illinois residency for the purposes of charging in-state tuition or providing other educational benefits. Rend Lake College is located in Ina, IL.

12.    Defendant Board of Trustees of the University of Illinois is the governing body at the University of Illinois. It is a state entity created by state statute and is charged with fixing rates for tuition at the University of Illinois, as well as determining Illinois residency for the purpose of charging in-state tuition or providing other educational benefits. *See* 110 ILCS §§ 305/7, 7e-5.

13.    Defendant Board of Trustees of Chicago State University governs, manages, and maintains Chicago State University including all its branches. It is a state entity created by state statute and is charged with setting rates for tuition at Chicago State University, as well as determining Illinois residency for the purpose of charging in-state tuition or providing other educational benefits. *See* 110 ILCS §§ 660/5-45, 88.

14.     Defendant Board of Trustees of Eastern Illinois University oversees all aspects of the institution and is the primary authority over the university's operations. It is a state entity created by state statute and is charged with fixing rates for tuition at Eastern Illinois University, as well as determining Illinois residency for the purpose of charging in-state tuition or providing other educational benefits. *See* 110 ILCS §§ 665/10-45, 88.

15.     Defendant Board of Trustees of Illinois State University is the final authority in all matters affecting the institution, and it exercises jurisdiction over the institution's financial, educational, and other policies and over its relation with the state and federal governments. It is a state entity created by state statute and is charged with fixing rates for tuition at Illinois State University, as well as determining Illinois residency for the purpose of charging in-state tuition or providing other educational benefits. *See* 110 ILCS §§ 675/20-45, 88.

16.     Defendant Board of Trustees of Northeastern Illinois University has the authority and responsibility to operate, manage, control and maintain Northeastern Illinois University. The Board is a state entity created by state statute and is charged with fixing rates for tuition at Northeastern Illinois University, as well as determining Illinois residency for the purpose of charging in-state tuition or providing other educational benefits. *See* 110 ILCS §§ 680/25-45, 88.

17.     Defendant Illinois Student Assistance Commission ("ISAC") is a state entity created by state statute to assist Illinois students in realizing their postsecondary educational goals and administer programs for monetary assistance for students. 110 ILCS §§ 947/15, 20.

18.     Defendant Illinois DREAM Fund Commission is a state entity charged with establishing a not-for-profit entity for fundraising, training, and awarding scholarships, raising funds for the DREAM Fund, and selecting recipients of scholarships funded by the DREAM Fund. 110 ILCS § 947/67.

## FEDERAL LAW

19.    The Constitution empowers Congress to "establish a uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3. The Constitution also vests the President of the United States with the "executive Power," U.S. Const. art. II, § 1, and authorizes the President to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3.

20.    The United States has well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from the United States Constitution, numerous acts of Congress, and binding Supreme Court precedent.

21.    Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws.

22.    In Executive Order 14218 of February 19, 2025, *Ending Taxpayer Subsidization of Open Borders*, President Trump ordered Departments and Agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens[.]" 90 Fed. Reg. 10,581, 10,581 (Feb. 25, 2025).In Executive Order 14287 of April 28, 2025, *Protecting American Communities From Criminal Aliens*, President Trump ordered the relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by Federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens[.]" 90 Fed. Reg. 18,761, 18,762 (May 2, 2025).

23.     These Orders derive from the President's statutory and constitutional authority to carry out and execute the prohibitions in 8 U.S.C. § 1623(a) against "not lawfully present" aliens receiving "eligib[ility] on the basis of residence within a State ... for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit ... without regard to whether the citizen or national is such a resident." The Orders reinforce congressionally authorized and enacted provisions underscoring and mandating that the Federal and state governments must not treat Americans less favorably than aliens not lawfully present in the United States as to eligibility for benefits. They also reiterate congressional intent, evidenced in several statutory provisions of the Immigration and Nationality Act (INA), to curb incentives for illegal immigration provided by the availability of various public benefits.

24.     Specifically, in 1996, Congress passed, and President Bill Clinton signed, the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). *See* IIRIRA, Pub. L. No. 104-208, Div. C, §§ 306, 308, 110 Stat. 3009-546 (1996). One of the objectives of that statute was to promote immigrant self-sufficiency, reduce immigrant reliance on public assistance, and ensure that public benefits are not incentives to enter illegally. *Id*.; *see* 8 U.S.C. § 1601 ("Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.").

25.     Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." *Id*. § 1601(2)(A).

26.     Congress emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id*. § 1601(2)(B). Moreover, Congress established that, as a matter of public policy, there "is a compelling government interest to enact

new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." *Id.* § 1601(5), (6).

27.     As relevant here, IIRIRA includes a clear "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." 8 U.S.C. § 1623. Section 1623(a) provides that:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

28.     Section 1623(a) thus does not allow states to provide illegal aliens with lower in-state tuition rates (also referred to as "resident tuition") based on residence within the state if that same tuition rate is not made available to all U.S. citizens and nationals regardless of their state residency. 8 U.S.C. § 1623(a). Section 1623(a) is not limited to tuition, however, and also does not allow states to provide illegal aliens with any "post-secondary education benefit", such as scholarships, based on residence within the state if that same benefit is not made available to all U.S. citizens and nationals regardless of their state of residence.

29.     The United States challenges the State of Illinois' flagrant and ongoing violation of this prohibition.

## THE ILLINOIS LAWS

30.     In direct conflict with federal law, Illinois law permits an alien who is not lawfully present in the United States to qualify for reduced in-state tuition rates and for other benefits such

as scholarships or grants based on residence within the state. At the same time, it denies these benefits to U.S. citizens who do not qualify as Illinois residents.

### Illinois Public Act 093-0007 (2003)

31.    Illinois Public Act 093-0007 ("2003 Act"), sometimes referred to as the "Acevedo Bill" was signed into law on May 20, 2003, and provides eligible students with access to in-state tuition at the state's public colleges and universities.[2]

32.    Under the 2003 Act, students who are not citizens or lawful permanent residents of the United States can establish Illinois residency for tuition purposes by meeting the requirements of the Act, namely residing with their parents or guardians while attending a public or private high school in Illinois for at least three years, graduating from these programs or receiving an equivalent of a high school diploma, signing an affidavit stating that the individual will file an application to become a permanent resident of the United States at the earliest opportunity the individual is eligible to do so, and not establishing residence outside Illinois. *See* 110 ILCS §§ 305/7e-5(a)(5), 520/8d-5(a)(5), 660/5-88(a)(5), 665-10/88(a)(5), 675/20-88(a)(5), 680/25-88(a)(5), 805/6-4a(a)(5). Schools provide Residency Affidavits outlining the criteria of the law.[3]

33.    The 2003 Act does not exempt illegal aliens from establishing Illinois residency for the purpose of qualifying for in-state tuition.

---

[2] Many Illinois Universities explain aspects of the law on their websites. *See, e.g.,* https://siu.edu/admissions/undergraduate/apply/undocumented-students.php    ("Undocumented Illinois Residents ... can qualify for residency through IL Public Act 93-0007."); https://dream.uic.edu/scholarships/legislation-101/who-qualifies-for-in-state-tuition (last visited August 11, 2025) (The 2003 Act "allows for in-state tuition for certain students who are not U.S. citizens or legal permanent residents, or do not possess a green card, visa, or other legal documentation, provided specific criteria are met.")
[3] *See, e.g.,* https://www.uaps.uillinois.edu/UserFiles/Servers/Server_808163/File/Residency_Affidavit.pdf

34.    Indeed, the availability of reduced in-state tuition to individuals who are not lawfully present in the United States is advertised on various public-facing websites operated by the Defendant institutions.[4]

35.    Pursuant to the 2003 Act, an individual who is not lawfully present in the United States, who establishes Illinois residency via the above statutory criteria, pays the same tuition rate as other Illinois residents. Conversely, U.S. citizens and nationals who are residents of other states cannot establish Illinois residency for tuition under the 2003 Act and are not entitled to the same tuition benefits under the Act. Thus, under the 2003 Act, an individual who is a not lawful permanent resident can pay a lower tuition rate than a non-Illinois resident that is a U.S. citizen or a lawful permanent resident.

36.    The 2003 Act tuition provisions sunset on July 1, 2026, in favor of an even less-stringent 2024 amendment (*i.e.*, a law that favors even more illegal aliens over U.S. citizens and nationals), discussed *infra*.

### The Illinois DREAM Act
Public Act 97-233 (2011)

37.    The Illinois DREAM Act, Public Act 97-233, was signed into law in 2011. Among other changes, it added 110 ILCS § 947/67, which directed the ISAC to create an Illinois DREAM

---

[4] *See*, *e.g.*, https://siu.edu/admissions/undergraduate/apply/undocumented-students.php;
https://www.uaps.uillinois.edu/student_programs/residency_information/illinois_law_on_in-state_tuition;
https://www.uaps.uillinois.edu/student_programs/residency_information/residency_status_requirements;
https://www.admissions.illinois.edu/apply/undocumented;
https://www.csu.edu/news/2019archived/instate_tuition.htm;
https://www.eiu.edu/finaid/cost.php;
https://illinoisstate.edu/admissions/undocumented/;
https://www.neiu.edu/financial-aid/tuition-fees/tuition-information.

Fund funded by private donations and an Illinois DREAM Fund Commission. It directed the Governor to appoint nine persons to the DREAM Fund Commission, and charged the Commission with various functions including establishing a not-for-profit entity for fundraising, training, and awarding scholarships; raising funds for the DREAM Fund; and selecting recipients of scholarships funded by the DREAM Fund.

38.    The Illinois DREAM Act also set the minimum qualifications for a student to qualify for a scholarship, namely that the student (1) resided with his or her parents or guardian while attending a public or private high school in Illinois; (2) graduated from a public or private high school or received the equivalent of a high school diploma in Illinois; (3) attended school in Illinois for at least three years as of the date he or she graduated from high school or received the equivalent of a high school diploma; and (4) had at least one parent who immigrated to the United States. 110 ILCS § 947/67(c).

39.    Pursuant to the DREAM Act, an Illinois DREAM Fund Commission was created and members were appointed by the Governor.[5] A DREAM Fund was also created. Scholarships were awarded beginning in 2012.

40.    At some point in time, the Illinois DREAM Fund Commission further limited the statutory eligibility requirements to "undocumented students" in Illinois.[6]

### The Retention of Illinois Students and Equity ("RISE") Act
Public Act 101-0021 (2019)

41.    In 2019, the Illinois General Assembly passed the Retention of Illinois Students and Equity Act (hereinafter the "RISE Act"), which was signed into law and codified at 110 ILCS

---

[5] *See, e.g*., https://www.isac.org/resources-for-non-us-citizens/ (describing DREAM Fund and commission)
[6] See www.ildreamfund.org.

§ 986/, with an effective date of January 1, 2020.

42.    The RISE Act extended state financial assistance to illegal aliens and also exempted such assistance from caps on grant assistance available under the Monetary Award Program ("MAP") other than those required by state law. 110 ILCS § 986/15(a), (b).

43.    The RISE Act defined "Illinois resident" to include "any person who is deemed an Illinois resident for tuition purposes under State law." 110 ILCS § 986/10.

44.    Section 15, entitled "Equitable eligibility for financial aid and benefits," declares: "A student who is an Illinois resident and who is not otherwise eligible for federal financial aid, including, but not limited to, … a noncitizen student who has not obtained lawful permanent residence, shall be eligible for State financial aid and benefits as described in subsection (b)." 110 ILCS § 986/15.

45.    Subsection (b) makes Illinois-resident students eligible to apply for or receive consideration for "any student aid or benefit funded or administered by the State, any State agency, or any public institution of higher learning." *Id.* Such benefits include "scholarships, grants, awards, stipends, room and board assistance, tuition waivers, or other financial or in-kind assistance." *Id.*

46.    The General Assembly specified that the RISE Act was intended to provide benefits to illegal aliens, even though it did not extend eligibility for those benefits to U.S. Citizens or nationals of other states. *See id.* § 986/15(d) (citing 8 U.S.C. § 1621(d)).

47.    Thus, illegal aliens who are deemed Illinois residents for tuition purposes are also eligible to apply for state financial aid under the Illinois RISE Act.[7]

---

[7] *See, e.g.,* https://www.ilga.gov/Legislation/ILCS/Articles?ActID=3991&ChapterID=18;

Public Act 103-0876

48.     Illinois Public Act 103-0876 ("2024 Act"), signed into law on August 9, 2024, makes changes to current law and expands in-state tuition for illegal aliens. Effective July 1, 2026, the Illinois residency criteria for in-state tuition will change. Students—with the exception of individuals who have a non-immigrant status that "precludes an intent to permanently reside in the United States" under 8 U.S.C. § 1101(a)—will be eligible for in-state tuition if they meet one of the two sets of residency requirements:

    a.  First set (2 years of high school):

- attended an Illinois high school for at least two years before enrolling at the university;

- graduated from an Illinois high school or received the equivalent of a high school diploma in Illinois;

- attended high school while residing in Illinois and did not establish residency outside of Illinois before enrolling at the university;

- if the individual is not a citizen or lawful permanent resident of the United States, the individual swears and affirms to the university that the individual will file an application to become a permanent resident at the earliest opportunity if eligible to do so.

---

https://siu.edu/admissions/undergraduate/apply/undocumented-students.php#:~:text=The%20Retention%20of%20Illinois%20Students,forms%20of%20state%20financial%20aid ("The Retention of Illinois Students & Equity (RISE) Act allows eligible undocumented … students who are disqualified from federal student aid to apply for all forms of state financial aid.");
https://dream.uic.edu/scholarships/legislation-101/illinois-rise-act/.

    b.   Second set (three years including a combination of high school and community college):

- attended any of the following for at least two years and attended for a cumulative total of at least three years before enrolling at the university:
  - a public or private high school in Illinois
  - a public community college
  - a combination of high school and community college
- and at the time of enrollment:
  - graduated from high school in Illinois or received the equivalent of a high school diploma in Illinois; and
  - earned an associate degree from or completed at least 60 credit hours at a community college;
- has not established residency in another state before enrolling at the university; and
- if the individual is not a citizen or lawful permanent resident of the U.S., the individual swears and affirms to the university that the individual will file an application to become a permanent resident at the earliest opportunity if eligible to do so.

*See* 110 ILCS §§ 305/7e-5(a-5), 520/8d-5(a-5), 660/5-88(a-5), 665-10/88(a-5), 675/20-88(a-5), 680/25-88(a-5).

49.     The 2024 Act, like the 2003 Act before it, does not exempt illegal aliens from establishing Illinois residency for the purpose of qualifying for in-state tuition.

**2025 Amendments to the RISE Act**
Public Act 104-0164

50.    In 2025, the Governor of Illinois signed into law Public Act 104-0164, which amends provisions of the RISE Act, effective January 1, 2026. The Amendments expand the scope of benefits available to those covered by the RISE Act to include benefits offered by a unit of local government.

**Implementation of the Challenged Illinois Laws**

51.    The Board of Trustees of each state-funded Illinois University has the authority to set tuition rates, including disparate rates of tuition for students who qualify as Illinois residents versus those who do not. As noted above, not all Boards of Trustees establish disparate tuition rates for the schools they manage, but many, like the majority of the Defendants here, do.

52.    At Southern Illinois University Carbondale, during the 2024-2025 school year, graduate tuition and fees were $14,220 for in-state students; but they were more than *twice* that—$31,122—for out-of-state students. For the 2025-2026 school year, graduate tuition and fees for in-state residents are $14,388, while graduate tuition and fees for out-of-state students are over double the cost at $31,290.[8] Likewise, for undergraduates in the business school, non-residents pay over twice the tuition as Illinois residents.[9]

53.    At the University of Illinois Urbana-Champaign, during the 2024-2025 school year, undergraduate tuition and fees were $16,004 for in-state students; but they were more than *twice* that—$35,124—for out-of-state students.[10] For the 2025-2026 school year, undergraduate tuition and fees for in-state residents was estimated to be $18,046-$23,426, while tuition and fees for out-

---

[8] https://fao.siu.edu/cost/estimated-budgets.php
[9] https://tuition.siuc.edu/overview.html
[10] *See* https://nces.ed.gov/collegenavigator/?s=IL&ct=1&pg=5&id=145637#expenses

of-state students were estimated to be over $20,000 higher, at $38,398-$46,498.[11] Similarly, average graduate tuition and fees for the 2024-2025 school year were $19,278 for in-state students and $34,406 for out-of-state students, and were $20,012 for in-state students versus $36,804 for out-of-state students for the 2025-2026 school year.[12]

54.    At Illinois State University, during the 2024-2025 and 2025-2026 school years, undergraduate tuition and fees were $16,152 for in-state students and $28,218 for out-of-state students.[13] During the 2025-2026 school year, graduate tuition and fees were $10,286 for in-state students and $18,478 for out-of-state students.[14]

55.    At Northeastern Illinois University, for the 2025-2026 school year, undergraduate tuition and fees for in-state residents are $6,371.40, while undergraduate tuition and fees for out-of-state students are nearly double the cost at $11,542.80.[15] For the 2025-2026 school year, graduate tuition and fees for in-state residents are $6,928.80, while graduate tuition and fees for out-of-state students are $12,657.60.[16]

56.    At Chicago State University, for the Spring 2025 semester, graduate tuition per credit hour for students admitted Fall 2023–Summer 2024 was $349 for in-state students and $675 for out-of-state students.[17] For the Fall 2025 semester, graduate tuition per credit hour for students admitted Fall 2023–Summer 2025 was $349 for in-state students and $675 for out-of-state students.[18]

---

[11] *See* https://www.admissions.illinois.edu/invest/tuition
[12] https://nces.ed.gov/collegenavigator/?s=IL&l=94&ct=1&id=145637#expenses
[13] https://financialaid.illinoisstate.edu/paying/2024-2025-undergraduate/;
https://financialaid.illinoisstate.edu/paying/2025-2026-undergraduate/
[14] https://financialaid.illinoisstate.edu/paying/2024-2025-undergraduate/
[15] https://catalog.neiu.edu/tuition-fees/tuition/
[16] *Id.*
[17] https://www.csu.edu/financialoperations/bursar/tuition/
[18] *Id.*

57.    At Eastern Illinois University, during the 2024-2025 school year, graduate tuition and fees were $14,552.50 for in-state students,[19] but they were nearly *twice* that—$29,013—for out-of-state students.[20] For the 2025-2026 school year, graduate tuition and fees for in-state residents are $14,838.60,[21] while graduate tuition and fees for out-of-state students are more than double the cost at $29,694.90.[22]

58.    At Rend Lake College, for the 2025–2026 academic year, in-district tuition per credit hour is $110, and double the cost—$220 per credit hour—for out-of-state students.[23]

59.    Thus, the magnitude of this discrimination against U.S. citizens, as embodied in the 2003 and 2024 Acts, is substantial. The cost of tuition for Illinois resident students, including illegal aliens who qualify for residency, is often *significantly* lower than for U.S. citizens and nationals who are residents of other states.[24]

60.    The ISAC was created by the Illinois legislature to administer programs to assist Illinois students in realizing their postsecondary educational goals. 110 ILCS § 947/15, 20.

---

[19] https://www.eiu.edu/finaid/cost.php?year=2024-2025&program_level=graduate&program_modality=inperson&residency_status=illinois&credit_hours=15&live_on_campus=yes&submit=#topofpage
[20] https://www.eiu.edu/finaid/cost.php?year=2024-2025&program_level=graduate&program_modality=inperson&residency_status=nonillinois&credit_hours=15&live_on_campus=yes&submit=#topofpage
[21] https://www.eiu.edu/finaid/cost.php?year=2025-2026&program_level=graduate&program_modality=inperson&residency_status=illinois&credit_hours=15&live_on_campus=yes&submit=#topofpage
[22] https://www.eiu.edu/finaid/cost.php?year=2025-2026&program_level=graduate&program_modality=inperson&residency_status=nonillinois&credit_hours=15&live_on_campus=yes&submit=#topofpage
[23] https://rlc.edu/tuition-costs.
[24] https://www.ibhe.org/pdf/tuitionsAndFees/2026/FY17_26_Tuition_History_All_Public_Universities.pdf (table summarizing tuition costs for all Illinois Universities, including in state versus out of state tuition costs)

61.     ISAC offers Illinois residents a variety of grant and scholarship programs, eligibility for which is based on factors such as financial need, academic achievement, chosen field of study, or military service. The cornerstone of these programs is ISAC's need-based Monetary Award Program ("MAP"). Each year, MAP awards over $400 million in grants to approximately 145,000 undergraduates who demonstrate financial need for such assistance. Grants awarded through MAP cover tuition and mandatory fees.

62.     The remaining gift aid programs offered by ISAC are more targeted in nature. They range in focus from those that recognize academic achievement or chosen field of study/profession to those that reward military service. Collectively, these targeted scholarship and grant programs award millions in gift aid to qualified applicants each year.

63.     Illinois has created a separate financial aid application for illegal aliens, called the Alternative Application for Illinois Financial Aid ("Alternative Application"), which enables illegal aliens to apply for the Illinois MAP grants, the state's largest need-based grant program for low-income college students. The Alternative Application is accessible through the ISAC website. It does not apply to U.S. Citizens, who are expected to complete the Free Application for Federal Student Aid ("FAFSA").

64.     MAP grants are administered by Illinois state universities, including those named as Defendants, based on the eligibility criteria established by ISAC.[25] MAP funding is typically insufficient to meet the demand.[26]

---

[25] https://www.isac.org/students/during-college/types-of-financial-aid/grants/monetary-award-program/; *see also* https://fao.siu.edu/types/grants.php.
[26] https://www.isac.org/students/during-college/types-of-financial-aid/grants/monetary-award-program/

65.    DREAM Fund scholarships are separately administered by the Illinois Dream Fund Commission.[27] It has awarded hundreds of scholarships and limits those scholarships to "undocumented students." Beginning in 2024, money to support the fund is raised, in part, through Illinois Lottery scratch-off tickets. 20 ILCS § 1605/21.16.

66.    Illinois laws make other scholarships and benefits available to Illinois resident students, including illegal aliens, whether administered by state or local government or individual schools. Those same benefits are not available to U.S. citizens and nationals who are residents of other states. As a result, Illinois Universities offer scholarships (*i.e.*, "postsecondary education benefit[s]," 8 U.S.C. § 1623(a)) based on Illinois residency to students including those unlawfully present in the United States that are not available to U.S. citizens and nationals having residency in other states.

67.    For the year 2022, there were approximately 408,000 student aliens not lawfully present enrolled in U.S. institutions of higher education, including an estimated over 27,000 in Illinois.[28]

## THE CHALLENGED ILLINOIS STATUTES ARE PREEMPTED

68.    The Constitution's Supremacy Clause mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

---

[27] https://www.isac.org/resources-for-non-us-citizens/#DREAM
[28] *See* https://www.higheredimmigrationportal.org/state/illinois/;
https://www.higheredimmigrationportal.org/wp-content/uploads/2025/04/Undocumented-Students-in-Higher-Education-June-2024-2-pager-corrected.pdf

69. Express preemption occurs when Congress, by statute, explicitly supersedes all state enactments in a particular area. *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 203–04 (1983).

70. Federal statutes may preempt state laws and render them invalid. They may do this expressly, by declaring that intent on the face of the statute. *Arizona*, 567 U.S. at 399; *see Chambers v. Osteonics Corp.*, 109 F.3d 1243, 1246 (7th Cir. 1997) ("Because the intent of Congress controls on issues of preemption, '[i]f the statute contains an express preemption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.'") (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)).

71. "[U]nder the Supremacy Clause, from which our pre-emption doctrine is derived, any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. National Solid Wastes Management Assn.*, 505 U.S. 88, 108 (1992); *see Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) (Under the Supremacy Clause, state laws that conflict with federal law are "without effect."); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (same); *Time Warner Cable v. Doyle*, 66 F.3d 867, 874 (7th Cir. 1995) ("Congress, in the exercise of the legislative authority granted to it by the Constitution, may preempt state law.") (citation omitted).

72. When the statute contains an express preemption clause, the court does not indulge "any presumption against preemption but instead focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Puerto Rico v. Sanchez-Valle*, 579 U.S. 59, 125 (2016). Further, in determining whether a state law or regulation is preempted, "'the ultimate touchstone' is congressional purpose." *Fifth Third Bank ex rel. Tr.*

*Officer v. CSX Corp.*, 415 F.3d 741, 746 (7th Cir. 2005) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)); *see Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978) ("'The purpose of Congress is the ultimate touchstone' of pre-emption analysis.") (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103 (1963)).

73.    Here, the federal law—namely, 8 U.S.C. § 1623(a)—explicitly overrides state resident tuition benefits for aliens not lawfully present in the United States. The Fifth Circuit has already held as much in *Young Conservatives of Texas Foundation v. Smatresk*, stating that § 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." 73 F.4th 304, 312-13 (5th Cir. 2023). *See also Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating, in the context of reduced in-state tuition, that under Section 1623(a) "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit").

74.    Moreover, with respect to the exact issue of reduced in-state tuition for unlawful aliens, two federal district courts recently declared similar laws preempted under 8 U.S.C. § 1623(a).  In *United States v. Texas*, the challenged Texas Education laws permitted aliens not lawfully present in the U.S. to qualify as Texas residents eligible for in-state tuition if they met the following: (1) they establish and maintain domicile continuously *or* graduate from a public or private school or acquire the equivalent of a high school diploma and maintain a residence continuously for a set period of time and (2) they submit an affidavit stating that the person will apply to become a permanent resident in the U.S. as soon as the person becomes eligible to apply. The court found them preempted by federal law. *See United States v. Texas*, No. 7:25-cv-00055, --- F. Supp. 3d---, 2025 WL 2423900 at *1-2 (N.D. Tex. Aug. 15, 2025). In *United States v.*

*Oklahoma*, the challenged Oklahoma laws individuals who were not lawfully present in the United States could qualify for in-state tuition or nonresident tuition waivers if they met certain residency and high school graduation criteria. The court found them preempted by federal law. *See* Exhibit A, *United States v. Oklahoma*, No. 6:25-cv-265 (E.D. Ok. Aug. 7, 2025), ECF 11 at 2-3 (magistrate report and recommendation), *adopted by district court*, *id.*, ECF 22 (August 29, 2025).

75.    Section 1623(a) directs that "[n]otwithstanding any other provision of law," an alien not lawfully present in the U.S. "shall not be eligible on the basis of residence within a State … for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit … without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a).

76.    As evidenced in the title, "Limitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits," Section 1623(a) requires that all U.S. citizens be eligible for a benefit, without regard to residency, before any alien not lawfully present in the U.S. can be eligible to receive the same benefit (based on residency).

77.    Therefore, the federal statute, 8 U.S.C. § 1623(a), preempts Illinois statutes that grant benefits to illegal aliens based on residency when U.S. citizens do not receive the same.

78.    By bestowing greater education benefits on illegal aliens than U.S. citizens, the above-cited provisions are preempted and therefore violate the Supremacy Clause.

## CLAIMS FOR RELIEF

### COUNT ONE
### VIOLATION OF THE SUPREMACY CLAUSE
### (PREEMPTION)

79.    Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

80.    The 2003 and 2024 Acts, as applied to aliens who are not lawfully present in the United States, violate federal immigration law's prohibition on providing postsecondary education benefits—such as lower tuition rates—based on residency to aliens not lawfully present in the United States that are not available to all U.S. citizens and nationals regardless of residency.

81.    The 2003 and 2024 Acts, as applied to aliens who are not lawfully present in the United States, are preempted by 8 U.S.C. § 1623(a).

## COUNT TWO
## VIOLATION OF THE SUPREMACY CLAUSE
## (PREEMPTION)

82.    Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

83.    The RISE Act, as applied to aliens who are not lawfully present in the United States, violates federal immigration law's prohibition on providing postsecondary education benefits—such as student aid or benefits funded or administered by the state, any state agency, or any public institution of higher learning—based on residency to aliens not lawfully present in the United States that are not available to all U.S. citizens and nationals regardless of residency.

84.    The RISE Act, as applied to aliens who are not lawfully present in the United States, is preempted by 8 U.S.C. § 1623(a).

## COUNT THREE
## VIOLATION OF THE SUPREMACY CLAUSE
## (PREEMPTION)

85.    Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

86.    The Illinois DREAM Act, as applied to aliens not lawfully present in the United States, violates federal immigration law's prohibition on providing postsecondary education benefits—such as state-administered scholarships—based on residency to aliens not lawfully

present in the United States that are not available to all U.S. citizens and nationals regardless of residency.

87.    The Illinois DREAM Act, as applied to aliens who are not lawfully present in the United States, is preempted by 8 U.S.C. § 1623(a).

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

1.    That this Court enter a judgment declaring that the challenged provisions, as applied to aliens who are not lawfully present in the United States, violate the Supremacy Clause and are therefore unconstitutional and invalid;

2.    That this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, and employees, from enforcing the challenged provisions as applied to aliens who are not lawfully present in the United States;

3.    That this Court award the United States its costs and fees in this action; and

4.    That this Court award any other relief it deems just and proper.

DATED: August 28, 2025

STEVEN D. WEINHOEFT
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF ILLINOIS
NINE EXECUTIVE DRIVE
FAIRVIEW HEIGHTS, ILLINOIS 62208
TEL: (618) 628-3700
FAX: (618) 628-3720
STEVEN.WEINHOEFT@USDOJ.GOV

CHAD MIZELLE
Acting Associate Attorney General

ABHISHEK S. KAMBLI
Deputy Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General

ALESSANDRA FASO
Acting Assistant Director

By: /s/ *Alexandra McTague*
ALEXANDRA MCTAGUE
Senior Litigation Counsel
U.S. Department of Justice Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel. 202-718-0483
Fax: 202-305-7000
alexandra.mctague2@usdoj.gov

*Attorneys for the United States*