IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff,* | No. 3:25-cv-1691-DWD |
| v. | |
| STATE OF ILLINOIS, *et al.* | |
| *Defendants.* | |

**PLAINTIFF'S SUPPLEMENTAL BRIEF REGARDING ILLINOIS HB 5093**

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

BACKGROUND ...............................................................................................................2

    A.    Procedural History ...............................................................................................2

    B.    HB 5093 ...............................................................................................................2

STANDARD OF REVIEW ...............................................................................................4

ARGUMENT ...............................................................................................................5

    I.    ILLINOIS HB 5093 DOES NOT MOOT THIS CASE .....................................5

    A.  If HB 5093 Becomes Law, Which is Not Guaranteed,
        Its Fall 2027 Effective Date Means the Current Dispute Is Not Moot................5

    B.  HB 5093 As Currently Drafted is Substantially Similar to the Current Laws .....6

    C.  Illinois' Voluntary Cessation Does Not Moot this Case......................................9

CONCLUSION...............................................................................................................10

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*ADT Sec. Servs. v. Lisle-Woodridge Fire Prot. Dist.*,
  724 F.3d 854 (7th Cir. 2013) ............................................................................... 5, 6, 7, 10

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ............................................................................................................ 10

*Chapman v. First Index, Inc.*,
  796 F.3d 783 (7th Cir. 2015) ........................................................................................... 5, 6

*City of Mesquite v. Aladdin's Castle, Inc.*,
  455 U.S. 283 (1982) .......................................................................................................... 10

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) .......................................................................................................... 10

*Knox v. Service Employees International Union*,
  567 U.S. 298 (2012) ............................................................................................................ 5

*Lewis v. Ind. DOT*,
  173 F.4th 876 (7th Cir. 2026) ............................................................................................. 9

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
  508 U.S. 656 (1993) .............................................................................................. 5, 7, 10, 11

*Smith v. Exec. Dir. of the Ind. War Mem'ls Comm'n*,
  742 F.3d 282 (7th Cir. 2014) ...................................................................................... 2, 5, 7

*Speech First, Inc. v. Killeen*,
  968 F.3d 628 (7th Cir. 2020) ............................................................................................. 10

*United States v. Walz*,
  -- F. Supp. 3d --, 2026 WL 851231 (D. Minn. March 27, 2026) ......................................... 9, 10

**Laws**

Ill. Const. Art. IV § 9(a) ........................................................................................................ 3

Ill. Const. Art. IV § 9(b) ..................................................................................................... 3, 5

Ill. Const. Art. IV § 9(c). ...................................................................................................... 5

8 U.S.C. § 1623 ........................................................................................................ 1, 3, 7, 9

ii

105 ILCS 5/10-20.12b(a) ........................................................................................... 8, 9

110 ILCS 305/7e-5 ....................................................................................................... 4, 5

110 ILCS 305/7e-5(e) .................................................................................................... 4

110 ILCS 805/6-4a ........................................................................................................ 4

110 ILCS 947/67 ........................................................................................................... 5

110 ILCS 947/67(c) ....................................................................................................... 5, 7

110 ILCS 986/10 ........................................................................................................... 5

**Legislation**

HB 5093 ............................................................................................................. passim

**Other Authorities**

Illinois General Assembly Executive Committee Hearing Excerpt, *available at*
*https://www.youtube.com/watch?v=my3yjoTvpvk* ................................................1, 3, 10

Status of HB 5093, *available at*
https://my.ilga.gov/Legislation/BillStatus?GAID=18&DocNum=5093&DocTypeID=HB&LegId
=166637 ..............................................................................................................2

Miletich, April 13, 2026, "Illinois House Democrats pass bill allowing undocumented immigrants
to pay in-state tuition at public universities," *available at*
https://www.wandtv.com/news/statehouse/il-house-democrats-pass-bill-allowing-undocumented-
immigrants-to-pay-in-state-tuition-at-public/article_68d5a0c3-ea7a-4566-8710-
c95302b71cdf.html (last visited June 12, 2026) ...........................................................3

Seth Austin, Aug. 11, 2024, "These were the four bills vetoed by Governor Pritzker on Friday"
*available at https://www.tristatehomepage.com/news/illinois-news/these-were-the-four-bills-
vetoed-by-gov-pritzker-on-friday/* (last visited June 16, 2026)......................................5

**INTRODUCTION**

Illinois lawmakers rushed through HB 5093 on the last day of the session in a transparent effort to evade this Court's review while preserving unlawful benefit eligibility for illegal aliens. Illinois's sudden change in tactics is telling. In moving to dismiss, the State argued that 8 U.S.C. § 1623 impermissibly commandeers state authority over education and residency classifications. By rushing to amend its statutes mid-litigation, Illinois has effectively conceded that its original position cannot withstand scrutiny. Defendants do not amend valid laws they believe are lawful; they amend to evade an impending loss on the merits. This about-face underscores that HB 5093 is not a good-faith effort to comply with Federal law, but rather an effort to obtain the same illegal outcome by changing tactics. Indeed, the bill's sponsor, Representative Hernandez, conceded that HB 5093 continues to provide eligibility to illegal aliens in Illinois while discriminating against U.S. Citizens of other states. *See https://www.youtube.com/watch?v=my3yjoTvpvk* at 0:46-1:07.

HB 5093 has not yet been enacted and therefore cannot moot this case. Even if enacted, HB 5093 by its terms will not take effect until the 2027-2028 school year. The current dispute and the harm to the United States remain in the interim since the laws challenged in the Complaint are still in effect. Regardless, in substance, the bill is substantially similar to the challenged laws and does not moot the case. *Smith v. Exec. Dir. of the Ind. War Mem'ls Comm'n*, 742 F.3d 282, 287 (7th Cir. 2014). HB 5093 continues to make illegal aliens eligible for in-state tuition and other benefits based on residence in Illinois while excluding U.S. Citizens of other states by removing express references to residence while maintaining the underlying residence-related criteria of high school attendance and graduation in Illinois. High school attendance and graduation in a state are a near-perfect proxy for residence, and HB 5093 thus runs headlong into the Federal statute prohibiting such benefits for the same reasons as the challenged laws.

HB 5093, if enacted, will not moot the current litigation. The Court should decide the dispute before it without delay.

## BACKGROUND

### A. Procedural History

The United States filed this lawsuit on September 2, 2025, seeking, *inter alia*, a declaratory judgment that the Acevedo Act, the RISE Act, and the DREAM Act, which set eligibility criteria for post-secondary educational benefits (including in-state tuition, grants, and scholarships) based on residency in Illinois, were expressly preempted by 8 U.S.C. § 1623 to the extent illegal aliens were included within the scope of such eligibility. ECF 1. The parties agreed the case could be resolved through dispositive motions, and thus Illinois moved to dismiss and the United States cross-moved for summary judgment. ECF 18, 26, 27, 33. The Court held a hearing on the motions on May 5, 2026. On June 2, 2026, this Court requested "additional briefing on the potential impact of House Bill 5093" which passed on May 31, 2026, and whether it "would moot any issues in this case." ECF 36. This brief sets forth why HB 5093 does not moot any issues in this case.

### B. HB 5093

HB 5093—which was introduced in February 2026, five months after this litigation commenced, and which passed both houses of the General Assembly on May 30-31, 2026— amends the Acevedo Act and the RISE Act to remove explicit references to residence in Illinois, while maintaining residence-based criteria of high school attendance and graduation within Illinois. *See* Ex. A (Enrolled bill). The bill was sent to the Governor on June 8, 2026,[1] and he has

---

[1] https://my.ilga.gov/Legislation/BillStatus?GAID=18&DocNum=5093&DocTypeID=HB&LegId =166637 (showing "Last Action" as "Sent to Governor" on June 8, 2026) (last visited June 16, 2026).

2

60 days to veto it, sign it, or take no action. Ill. Const. Art. IV § 9(a), (b).[2] If the Governor takes no action, the bill automatically becomes law. *Id.* §9(b). If enacted, the effective date of HB 5093 will be the 2027-2028 academic year. *See, e.g.*, Ex. A (Enrolled HB 5093) at 6-7 (showing edits to 110 ILCS 305/7e-5(e)); *see also id.* at 11, 16, 21, 26, 31, 36, 41. Likewise, for the Public Community Colleges Act (110 ILCS 805/6-4a), HB 5093 states that the law takes effect on July 1, 2027. *See* Ex. A at 45, 46.

HB 5093's sponsor, Rep. Barbara Hernandez, explained that the law was needed because "[t]here is no path at the moment from the federal government" for illegal aliens to receive in-state tuition.[3] During a hearing on HB 5093, she candidly admitted under questioning that the bill was meant to *preserve* benefit eligibility for illegal aliens who live in Illinois but that U.S. citizens of other states would continue to be charged the higher out-of-state tuition rates.[4]

HB 5093 amends the Acevedo Act by striking language in subsections (a-5)(1)(C) for each university which made a student eligible who "attended high school *while residing in this state and has not established residency outside of this State before enrolling at the University*." *See, e.g.,* Ex. A at 4 (showing revision as to 110 ILCS 305/7e-5) (emphasis added); *see also id.* at 9, 13-14, 18, 23, 28, 33, 38, 43. It strikes similar language in (a-5)(2)(C) which made a student eligible who "attended an educational institution set forth in subdivision (i) or (ii) of subparagraph (A) of this paragraph (2) *while residing in this State* and has not established residency outside of this State before enrolling at the University[.]" *Id.* at 5 (emphasis added); *see also id.* at 10, 15, 20, 24-25,

---

[2] As of the date of this filing, the Governor has not yet taken any action with respect to HB 5093.
[3] Miletich, April 13, 2026, "Illinois House Democrats pass bill allowing undocumented immigrants to pay in-state tuition at public universities," *available at* https://www.wandtv.com/news/statehouse/il-house-democrats-pass-bill-allowing-undocumented-immigrants-to-pay-in-state-tuition-at-public/article_68d5a0c3-ea7a-4566-8710-c95302b71cdf.html (last visited June 12, 2026).
[4] *See* https://www.youtube.com/watch?v=my3yjoTvpvk at 0:46-1:07.

29-30, 34-35, 39-40, 44. HB 5093 retains conditions that students must attend high school in Illinois and graduate from high school in Illinois, or show a combination of attending high school and community college in Illinois. *Id.* It does not exclude illegal aliens from eligibility for in-state tuition and retains the requirement for an illegal alien to affirm he will apply to become a lawful permanent resident at the earliest opportunity. *See id.* at 3, 8, 13, 17-18, 22-23, 27-28, 32-33, 36, 39, 42, 47.

As to tuition for community colleges, HB 5093 adds subsection (a-5), which takes effect July 1, 2027. Under that provision, community colleges "deem" a person an "Illinois resident" based upon high school attendance and graduation in Illinois. It also requires an illegal alien to affirm that he will seek permanent resident status as soon as he is able. *Id.* at 46-47. HB 5093 amends the RISE Act's Illinois Resident definition (110 ILCS 986/10) to include someone "charged tuition at the same rate as an Illinois resident under State law." *Id.* at 48.

HB 5093 does not amend the DREAM Act, 110 ILCS 947/67, and thus the eligibility requirements for a scholarship under that Act remain the same, including requirements for high school attendance and graduation in Illinois. *See* 110 ILCS 947/67(c); ECF 26 at 16, 25-26.

## STANDARD OF REVIEW

"A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chapman v. First Index, Inc.*, 796 F.3d 783, 786 (7th Cir. 2015) (citing *Knox v. Service Employees International Union*, 567 U.S. 298, 307 (2012)). "The problem of mootness posed by a defendant's change in policy or practice poses a recurring problem when injunctive relief is sought." *ADT Sec. Servs. v. Lisle-Woodridge Fire Prot. Dist.*, 724 F.3d 854, 864 (7th Cir. 2013). A substantially similar law will not moot the litigation. *Smith*, 742 F.3d at 287. Stated differently, a case is not moot if a newly enacted law fails to resolve the dispute because it

4

maintains objectionable aspects of the original law. *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662-63 (1993) (holding case not moot because new ordinance repeated the allegedly wrongful conduct despite some changes); *ADT Sec. Servs.*, 724 F.3d at 864 (new ordinance retained "several requirements from the original ordinance" and did not resolve dispute). Further, "evidence creating a reasonable expectation that the [defendant] will reenact the ordinance or one substantially similar" precludes mootness. *ADT Sec. Servs.*, 724 F.3d at 864 (citation omitted).

## ARGUMENT

### I.     HB 5093 DOES NOT MOOT THE CURRENT CASE

#### A.     If HB 5093 Becomes Law, Which is Not Guaranteed, Its Fall 2027 Effective Date Means the Current Dispute Is Not Moot

Though HB 5093, as amended, passed both houses of the Illinois Assembly, it could still be vetoed by the Governor, requiring a veto override for the bill to become law. Ill. Const. Art. IV, § 9(b), (c). Governor Pritzker has vetoed bills in the past.[5] Because there is no guarantee that HB 5093 will become law, the current dispute is not moot because the Court could provide relief by enjoining the current law. *See Chapman*, 796 F.3d at 786.

More fundamentally, even if HB 5093 is enacted, it will not take effect until the 2027-2028 school year. Ex. A at 5-6, 11, 16, 21, 26, 31, 36, 41, 46. In the interim, the 2024 Amendments to the Acevedo Act take effect July 1, 2026, *see* ECF 26 ¶¶17-19, and like the original Acevedo Act, the 2024 Act by its plain terms bases eligibility on residence within Illinois. At a minimum, the United States will continue to be injured by the challenged laws because illegal aliens will continue

---

[5] *See Seth Austin*, "These were the four bills vetoed by Governor Pritzker on Friday" (Aug. 11, 2024), available at *https://www.tristatehomepage.com/news/illinois-news/these-were-the-four-bills-vetoed-by-gov-pritzker-on-friday/* (last visited June 16, 2026).

to receive in-state tuition benefits based on residence while U.S. citizens residing outside Illinois will not, contrary to Federal law. *See id.* at 41-43. Additionally, HB 5093 does not amend the DREAM Act, 110 ILCS 947/67(c), and therefore cannot raise any mootness issues as to that Act.

**B.    HB 5093 As Currently Drafted is Substantially Similar to the Current Laws**

HB 5093 would not moot this case even if enacted because it is substantially similar to the challenged laws—that is, the amendments it makes to the existing laws do not resolve the dispute. *See Ne. Fla. Chapter of Associated Gen. Contractors of Am.*, 508 U.S. at 662; *ADT Sec. Servs.*, 724 F.3d at 864. "When a challenged policy is repealed or amended mid-lawsuit—a recurring problem when injunctive relief is sought—the case is not moot if a substantially similar policy has been instituted or is likely to be instituted." *Smith*, 742 F.3d at 287 (quotations/citation omitted).

To start, it is worth noting what HB 5093 does ***not*** do. It does *not* eliminate illegal alien eligibility for in-state tuition, grants, or scholarships. Nothing in the law excludes illegal aliens from eligibility. To the contrary, illegal aliens are explicitly contemplated in the bill. *See, e.g.*, HB 5093 (Ex. A) at 3, 8, 13, 17-18, 22-23, 27-28, 32-33, 36, 39, 42, 47 (requiring an affirmation that the alien will seek permanent residence status as soon as they are able). HB 5093 also does *not* eliminate the eligibility disparity between U.S. Citizens of other states and illegal aliens within Illinois. As the United States explained in its summary judgment briefing, under 8 U.S.C. § 1623, if a State chooses to distinguish between resident and nonresident U.S. citizens for in-state tuition and other benefits, illegal aliens are ineligible for the resident benefits. Illinois could have removed illegal alien eligibility based on residency and thus avoided preemption, but it did not.

What HB 5093 does do is *reframe* eligibility based upon high school attendance and graduation *within Illinois* to establish who is eligible for in-state tuition and other aid. It does so by removing language that explicitly refers to residence in Illinois but retaining eligibility criteria

6

based on residence. Thus, under both the current statute and the revised version, students must show the very same set of core facts: high school attendance in Illinois for a minimum number of years and a high school diploma or equivalent from within Illinois. The statute remains substantially similar despite the change because attending high school in Illinois for a minimum of two years and graduating from an Illinois high school is a near-perfect proxy for residence within the state. Illinois continues to assess eligibility for post-secondary education benefits on the basis of residence within Illinois during high school, and it continues to treat U.S. citizens who are residents of other states worse than people who spent their high school years in Illinois without being lawfully present in our Nation.

The purpose of Section 1623, shown by the plain text of the statute, is to prevent such disparate treatment of U.S. citizens as compared to illegal aliens. The legislative history is in accord, stating that "[t]his section provides that illegal aliens are not eligible for in-state tuition rates at public institutions of higher education." H.R. Rep. No. 104–828, 2d Sess. p. 240 (1996). In-state tuition is of course almost always provided to residents of a state and not to residents of other states—that is its very nature. Illinois cannot evade the fundamental statutory purpose of Section 1623 with creative semantics that rely on a residence proxy rather than the term residence itself. That is particularly true because the only plausible reading of Section 1623 is that, when a state establishes a scheme under which state residents who are U.S. citizens are charged one price and those who live elsewhere are charged more, aliens who are not lawfully present in the United States are not eligible for the lower rate, regardless of the particulars of the state scheme.

The Illinois School Code further illustrates that high school attendance within Illinois is a proxy for residence within Illinois. The residence of a pupil generally establishes the eligibility to attend school in a particular district, *see* 105 ILCS 5/10-20.12b(a), and the pupil's residence is "the

7

residence of a person who has legal custody of a pupil," 105 ILCS 5/10-20.12b(a). Even if Illinois could identify an edge case in which a student attends high school in Illinois while his guardian lives in another state, a *de minimis* exception does not negate the fact that typically Illinois residency is required to attend public high school in Illinois. And that, in turn, shows that by relying on high school attendance and graduation, HB 5093 continues to base in-state tuition and other post-secondary education benefits on residence in Illinois. Thus HB 5093 is substantially similar to the challenged laws and is, like those laws, preempted. Section 1623 is abundantly clear: if an eligibility determination is made "on the basis of residence within a State," then illegal aliens cannot be eligible for the preferential in-state tuition rate or for other benefits if U.S. citizens who are residents of other states are not so eligible. 8 U.S.C. § 1623.

Illinois may argue that this Court should adopt the reasoning of *United States v. Walz*, -- F. Supp. 3d --, 2026 WL 851231 (D. Minn. March 27, 2026), to conclude that HB 5093 is *not* substantially similar to the prior laws, but *Walz* was wrongly decided and the United States has appealed.[6] *First, Walz* concluded that for Section 1623(a) to preempt the challenged laws, those laws must mirror the "on the basis of residence" language in the statute; a residence proxy would not suffice. *Id.* But it is implausible that state law would be preempted only if it applied the precise definition of residence used in federal law. Both common sense and state law make plain that high school attendance and graduation are a proxy for residence. *See* 105 ILCS 5/10-20.12b(a).

*Second*, the *Walz* court stated that "on the basis of residence" requires "but-for causation," *id.* at *8, but misapplied that standard. "But-for" causation means that the condition is *a* consideration of the statute. *See Lewis v. Ind. DOT*, 173 F.4th 876, 882 (7th Cir. 2026) (discussing but-for causation in context of Americans with Disabilities Act ("ADA")). It does not require it to

---

[6] *See United States v. Tim Walz, et al.*, No. 26-1886 (8th Cir. May 5, 2026).

be the *sole* consideration of the statute. *Id.* (comparing but-for standard of ADA with sole causation standard). The *Walz* court wrongly applied a sole causation standard to conclude that any exception to the residence requirement precluded preemption. *Walz*, 2026 WL 851231 at *8.

*Third, Walz* found, alternatively, that Section 1623 did not preempt the challenged statutes because a single citizen residing in another state could be eligible for in-state tuition. *Walz*, 2026 WL 851231 at * 10-11. Section 1623's parallel structure is straightforward and as previously explained, is not defeated by a single nonresident U.S. citizen who is made eligible for the benefit. May 5, 2026, Hrg. Tr. 49:6-21; ECF 33 at 3. That reading guts Section 1623, leaving it ineffectual.

Ultimately, although HB 5093 removes language from the existing statute, it is substantially similar because it continues to premise eligibility on residence. Thus, the parties' dispute would remain even if HB 5093 were enacted. *See Ne. Fla. Chapter of Associated Gen. Contractors of Am.*, 508 U.S. at 662; *ADT Sec. Servs.*, 724 F.3d at 864.

## C.    Illinois' Voluntary Cessation Does Not Moot this Case

Under the voluntary cessation doctrine, a defendant is not permitted to moot a case simply by ending its unlawful conduct once sued. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). A defendant bears the "formidable burden" of proving that it is "absolutely clear" the allegedly wrongful behavior could not reasonably be expected to recur. *Id.*; *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)); *Speech First, Inc. v. Killeen*, 968 F.3d 628, 645 (7th Cir. 2020) (voluntary cessation inapplicable if facts show a state may return to the offending conduct). Courts apply this standard with skepticism when a government seeks to moot a case through a mid-litigation statutory amendment, especially where the legislature remains free to repeal or further amend the new provision at any time. *See City of Mesquite,* at 289 (legislative repeal does not moot

9

the case where the legislature "could reenact the offending provision at any time").

A defendant cannot "moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect." *Ne. Fla. Chapter of Associated Gen. Contractors of Am.*, 508 U.S. at 662.

Here, Illinois never abandoned the offending conduct but merely made a half-hearted attempt to *seem* to comply with the Constitution by passing a law substantially similar to those challenged in this litigation. *See supra* § I.B. HB 5093's sponsor confirmed as much when she candidly admitted that the rationale for the bill was to *preserve* benefit eligibility for illegal aliens who live in Illinois, *despite* federal law to the contrary: **Q.** [By Rep. Deering]: "So non-citizens are still getting in-state tuition as compared to American citizens from other states that would be required to pay out of state tuition, is that correct?" **A.** [By Rep. Hernandez]: "That is correct. And mainly because we do have a lot of undocumented population that has maybe were not born here but have been in this state for many, many years." *See* https://www.youtube.com/watch?v=my3yjoTvpvk at 0:46-1:07. When asked, she conceded HB 5093 would not resolve this lawsuit: **A.** [By Rep. Hernandez]: "…the lawsuit that you mentioned, it will not be automatically removed by this, by this law [*i.e.*, HB 5093] …." *Id.* at 1:35-2:03. This gamesmanship makes clear that Illinois's wrongful behavior in passing the challenged laws is reasonably likely to recur if this Court were to find this case moot.

## CONCLUSION

Accordingly, HB 5093 does not render this case moot and the United States requests that this Court grant summary judgment in its favor on all claims, enjoin enforcement of the challenged laws and any substantially similar laws, and deny Defendants' motion to dismiss.

Respectfully submitted,

10

STEVEN D. WEINHOEFT
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF ILLINOIS
NINE EXECUTIVE DRIVE
FAIRVIEW HEIGHTS, ILLINOIS 62208
TEL: (618) 628-3700
FAX: (618) 628-3720
STEVEN.WEINHOEFT@USDOJ.GOV

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General

ALESSANDRA FASO
Senior Litigation Counsel

By: /s/ *Alexandra McTague Schulte*
ALEXANDRA MCTAGUE SCHULTE
Senior Litigation Counsel
U.S. Department of Justice Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, D.C. 20044
Tel. 202-718-0483
alexandra.schulte@usdoj.gov

*Attorneys for the United States of America*

11