**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

UNITED STATES OF AMERICA,

     Plaintiff,

v.

STATE OF ILLINOIS et al.,

     Defendants.

No. 3:25-cv-01691-DWD

Honorable David W. Dugan

**DEFENDANTS' SUPPLEMENTAL BRIEF ADDRESSING WHETHER**
**ENACTMENT OF HOUSE BILL 5093 WOULD MOOT ANY ISSUES IN THIS CASE**

KWAME RAOUL
Illinois Attorney General

Darren Kinkead
Aleeza Strubel
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, IL 60603

## BACKGROUND

House Bill 5093 passed both houses of the Illinois legislature on May 31, 2026.[1] Defendants understand that the Governor intends to approve the bill and it will become law.

**Tuition.** House Bill 5093 amends subsection (a-5) of each of the university in-state tuition statutes challenged in this litigation to remove the requirement that a student is eligible only if she "attended high school while residing in this State and has not established residency outside of this State before enrolling at the University."[2] These changes "apply beginning with the 2027-2028 academic year."[3] House Bill 5093 makes similar changes to the community college in-state tuition statute that also become effective with the 2027-28 academic year.[4]

**Financial aid.** Students who are eligible for in-state tuition under any of the challenged statutes are also eligible for state financial aid. 110 ILCS 986/10 & 15(a). This means that House Bill 5093's changes to the challenged in-state tuition statutes will affect students' eligibility for

---

[1] A copy of the enrolled version of House Bill 5093 is attached to this filing. Other information about the bill (which was sent to the Governor last week) is available on the legislature's website. *See* ilga.gov/Legislation/BillStatus?DocNum=5093&GAID=18&DocTypeID=HB&LegId=166637&SessionID=114.

[2] House Bill 5093 at 3:2-3:4 & 4:6-4:10 (amending 110 ILCS 305/7e-5(a-5)(1)(C) & (2)(C) in the University of Illinois Act); *id.* at 8:1-8:3 & 9:5-9:9 (amending 110 ILCS 520/8d-5(a-5)(1)(C) and 2(C) in the Southern Illinois University Management Act); *id.* at 12:25-13:1 & 14:3-14:7 (amending 110 ILCS 660/5-88(a-5)(1)(C) & (2)(C) in the Chicago State University Law); *id.* at 17:23-17:25 & 19:1-19:5 (amending 110 ILCS 665/10-88(a-5)(1)(C) & (2)(C) in the Eastern Illinois University Law); *id.* at 27:19-27:21 & 28:23-29:1 (amending 110 ILCS 675/20-88(a-5)(1)(C) & (2)(C) in the Illinois State University Law); *id.* at 32:21-32:23 & 33:25-34:3 (amending 110 ILCS 680/25-88(a-5)(1)(C) & (2)(C) in the Northeastern Illinois University Law).

[3] House Bill 5093 at 5:26-6:2 (adding 110 ILCS 305/7e-5(e) to the University of Illinois Act); *id.* at 10:24-10:26 (adding 110 ILCS 520/8d-5(e) to the Southern Illinois University Management Act); *id.* at 15:22-15:24 (adding 110 ILCS 660/5-88(e) to the Chicago State University Law); *id.* at 20:20-20:22 (adding 110 ILCS 665/10-88(e) to the Eastern Illinois University Law); *id.* at 30:20-30:22 (adding 110 ILCS 675/20-88(e) to the Illinois State University Law); *id.* at 35:18-35:20 (adding 110 ILCS 680/25-88(e) to the Northeastern Illinois University Law).

[4] 110 ILCS 805/6-4a(a) (student is ineligible if she "establishes a residence outside of this State"); House Bill 5093 at 45:23-45:24 (amending 110 ILCS 805/6-4a(a) to make this subsection effective only through July 1, 2027); *id.* at 46:23-47:22 (adding 110 ILCS 805/6-4a(a-5), which eliminates the residency requirement effective July 1, 2027).

state financial aid beginning with the 2027-28 academic year. Thus, the federal government's challenge to the financial aid statute rises or falls with its tuition challenges. Although House Bill 5093 also directly amends 110 ILCS 986/10, those changes are not relevant to this litigation.[5]

**DREAM Fund.** House Bill 5093 does not make any changes to 110 ILCS 947/67, which governs the DREAM Fund scholarship. This is because students who reside in other states are already eligible for the scholarship. Although a recipient must "[h]ave resided with his or her parents or guardian while attending a public or private high school in this State," *id.* 67(c)(1), the phrase "in this State" modifies only "public or private high school" under the "nearest reasonable referent" canon, *see, e.g., United States v. Shaw*, 957 F.3d 734, 739 (7th Cir. 2020) ("'[w]hen the syntax involves something other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent'"). And students may live with their parents in Wisconsin or Missouri, say, while attending Illinois high schools.[6]

| EFFECTIVE TUITION STATUTES BY ACADEMIC YEAR | | |
| --- | --- | --- |
| **2025-26 academic year** | **2026-27 academic year** | **2027-28 academic year** |
| 110 ILCS 305/7e-5(a)<br>110 ILCS 520/8d-5(a)<br>110 ILCS 660/5-88(a)<br>110 ILCS 665/10-88(a)<br>110 ILCS 675/20-88(a)<br>110 ILCS 680/25-88(a) | 110 ILCS 305/7e-5(a-5)<br>110 ILCS 520/8d-5(a-5)<br>110 ILCS 660/5-88(a-5)<br>110 ILCS 665/10-88(a-5)<br>110 ILCS 675/20-88(a-5)<br>110 ILCS 680/25-88(a-5)<br><br>(all unamended) | 110 ILCS 305/7e-5(a-5)<br>110 ILCS 520/8d-5(a-5)<br>110 ILCS 660/5-88(a-5)<br>110 ILCS 665/10-88(a-5)<br>110 ILCS 675/20-88(a-5)<br>110 ILCS 680/25-88(a-5)<br><br>(all as amended by House Bill 5093) |
| 110 ILCS 805/6-4a(a) | | 110 ILCS 805/6-4a(a-5) |

---

[5] House Bill 5093 at 48:22-48:23.

[6] 105 ILCS 5/10-20.12a (Illinois public schools may choose to charge tuition to nonresident students); asset.findingschool.com/attachments/user_file/user170989_file/20201102105027426.pdf (students at Carmel Catholic High School in Lake County, Illinois, live in neighboring Kenosha County, Wisconsin).

## ARGUMENT

**Constitutional mootness.** "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Generally, "repeal, expiration, or significant amendment to challenged legislation ends the ongoing controversy and renders moot" any "request for injunctive relief." *Federation of Advertising Industry Representatives v. Chicago*, 326 F.3d 924, 930 (7th Cir. 2003).

The federal government's challenges to 110 ILCS 305/7e-5(a), 110 ILCS 520/8d-5(a), 110 ILCS 660/5-88(a), 110 ILCS 665/10-88(a), 110 ILCS 675/20-88(a), and 110 ILCS 680/25-88(a) will become constitutionally moot in two weeks. By their own terms, and regardless of House Bill 5093, these statutes apply only through the 2025-26 academic year and will cease to "have any 'continuing effect'" after June 30, 2026. *FBI v. Fikre*, 601 U.S. 234, 241 (2024).[7]

The federal government's challenges to the current (unamended) versions of 110 ILCS 305/7e-5(a-5), 110 ILCS 520/8d-5(a-5), 110 ILCS 660/5-88(a-5), 110 ILCS 665/10-88(a-5), 110 ILCS 675/20-88(a-5), 110 ILCS 680/25-88(a-5), and 110 ILCS 805/6-4a(a) are not *constitutionally* moot. These statutes apply through the 2026-27 academic year. Once the year ends, they too will cease to have "'continuing effect.'" *Fikre*, 601 U.S. at 241.[8]

---

[7] To be sure, students admitted while these statutes were in effect generally will pay the same tuition throughout their college careers under separate statutes not challenged here. *E.g.*, 110 ILCS 305/25; 110 ILCS 520/15; 110 ILCS 680/25-120. But each successive amendment to the challenged in-state tuition statutes only makes *more* students eligible for in-state tuition; none of the amendments deny in-state tuition to students who were eligible under a previous version. So the upshot is that any undocumented student who was eligible for in-state tuition under the statutes effective in the 2025-26 academic year will also be eligible for in-state tuition under the statutes effective in the 2026-27 and 2027-28 academic years.

[8] The federal government's challenge to 110 ILCS 986 is not constitutionally moot. Students are eligible for state financial aid under this statute if they are eligible for in-state tuition under any of the challenged tuition statutes. So all those statutes share the same fate. The federal government's challenge to 110 ILCS 947/67 is not constitutionally moot either. House Bill 5093 does not make any changes to this statute because students who reside in other states already were eligible for a DREAM Fund scholarship.

The federal government apparently has determined not to challenge (at least in this litigation) the amended versions of 110 ILCS 305/7e-5(a-5), 110 ILCS 520/8d-5(a-5), 110 ILCS 660/5-88(a-5), 110 ILCS 665/10-88(a-5), 110 ILCS 675/20-88(a-5), 110 ILCS 680/25-88(a-5), and 110 ILCS 805/6-4a(a-5), which will apply beginning in the 2027-28 academic year.[9] At first blush, that may seem like a long time from now. But for many universities, the admissions cycle for the 2027-28 academic year starts in a little more than two months. Declaration of Dr. Nicholas Jones ¶ 14 ("Jones Declaration") (attached). When prospective students submit applications for the 2027-28 academic year beginning in September 2026, universities will make admissions decisions and in-state tuition determinations using the versions of the statutes that have been amended by House Bill 5093. *Id.* ¶¶ 7-8, 14. They will also communicate those decisions to applicants, who then begin to rely on them to decide where to enroll. *Id.* ¶ 9.

For all these reasons, if there's going to be a fight about the amended tuition statutes, it makes good sense to have it out now. *See, e.g.*, *Arcidiacono v. Whitehorn*, No. 24-3019, 2026 WL 1649646, at *4 (7th Cir. June 8, 2026) (risk of injury "likely to materialize 'in the near future'" suffices for standing). Defendants therefore proposed to the federal government that it should supplement its complaint under Federal Rule of Civil Procedure 15(d) to raise any challenges it might have to these statutes—and that the parties should then submit supplemental briefs on the merits of those challenges later this summer. This would allow the Court time to resolve the parties' dispute before the 2027-28 admissions cycle gets too far along—perhaps by January 2027, when universities begin setting tuition rates for the coming year. Jones Declaration ¶ 5. For

---

[9] For what it's worth, House Bill 5093's changes will make the challenged Illinois tuition statutes materially identical to statutes in Minnesota and California that courts have held comply with the requirements of 8 U.S.C. § 1623(a) and therefore are not preempted by federal law. *United States v. Walz*, No. 25-cv-2668 (KMM/DTS), 2026 WL 851231 (D. Minn. Mar. 27, 2026), *appeal filed*, No. 26-1886 (8th Cir.); *Martinez v. Regents of the University of California*, 241 P.3d 855 (Cal. 2010); *see United States v. Newsom*, No. 2:25-cv-03375-TLN-JDP (E.D. Cal.) (pending challenge to same California statute).

unknown reasons, however, the federal government declined this proposal. *See Russell v. Todd*, 309 U.S. 280, 287 (1940) ("equity will not aid" plaintiffs whose unexcused delay causes harm).

**Prudential mootness.** What this means is that almost the only claims remaining for the Court to decide are the federal government's challenges to the current (unamended) versions of 110 ILCS 305/7e-5(a-5), 110 ILCS 520/8d-5(a-5), 110 ILCS 660/5-88(a-5), 110 ILCS 665/10-88(a-5), 110 ILCS 675/20-88(a-5), 110 ILCS 680/25-88(a-5), and 110 ILCS 805/6-4a(a). These statutes are only in effect for the 2026-27 academic year, however, and students and institutions alike began to rely on them almost a year ago in preparation for the upcoming term. Nevertheless, the federal government apparently wants the Court to expend scarce judicial resources to upend students' and institutions' settled expectations in a way that likely will cause harm to communities across Illinois, all for the sake of jettisoning statutes that very soon will cease to have any practical effect regardless of what happens in this litigation.

The Court should decline to do so because these remaining claims are *prudentially* moot. Under Seventh Circuit precedent, "mootness can be in part a prudential doctrine." *EEOC v. Flambeau, Inc.*, 846 F.3d 941, 950 (7th Cir. 2017). "Prudence" may, for example, caution against deciding "difficult" statutory questions when the "legal landscape" has changed and the parties no longer have "a serious stake in [the] outcome." *Id.* Even when it is "possible to conjure up a set of facts under which the relief sought would make [*some*] difference to the parties," where "it would be a very little difference, then to economize on judicial resources as well as to give expression to policies thought inherent in Article III the case will be declared moot and relief withheld." *Air Line Pilots Association v. UAL Corp.*, 897 F.2d 1394, 1396-97 (7th Cir. 1990).

Prudential mootness is really "a melange of doctrines relating to the court's discretion in matters of remedy and judicial administration." *Chamber of Commerce v. Department of Energy*,

627 F.2d 289, 291 (D.C. Cir. 1980). "Unlike Article III mootness, these doctrines address not the power to grant relief but the court's discretion in the exercise of that power." *Id.* A court, for instance, may "decline to grant declaratory or injunctive relief where it appears that a defendant, usually the government, has already changed or is in the process of changing its policies or where it appears that any repeat of the actions in question is otherwise highly unlikely." *Building & Construction Department v. Rockwell International Corp.*, 7 F.3d 1487, 1492 (10th Cir. 1993).

As then-Judge Gorsuch explained, a federal court's "remedial discretion" to award declaratory and injunctive relief (which is all that the federal government requests here) "necessarily includes the power to 'mould each decree to the necessities of the particular case.'" *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012) (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)). "And inhering in that power is the concomitant power to deny relief altogether unless 'the moving party [can] satisfy the court that relief is needed.'" *Id.* (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). "After all, if events so overtake a lawsuit that the anticipated benefits of a remedial decree no longer justify the trouble of deciding the case on the merits, equity may demand not decision but dismissal." *Id.* "Even though a flicker of life may be left in it, even though it may still qualify as an Article III 'case or controversy,' a case can reach the point where prolonging the litigation any longer would itself be inequitable." *Id.* Under these circumstances, the claims are prudentially moot. *Id.*; *see, e.g.*, *Florida Decides Healthcare, Inc. v. Byrd*, No. 4:25cv211-MW/MAF, 2026 WL 1182034, at *12 (N.D. Fla. Apr. 30, 2026) (applying prudential mootness to claims challenging statute that would be repealed in a few months once recently enacted legislation became effective).

To understand why the prudential mootness doctrine forecloses the federal government's challenges to the tuition statutes applicable in the 2026-27 academic year, consider the college

admissions cycle.[10] As many recall from their own or their children's experiences, the cycle

starts about a year in advance: students who will move into freshman dorms in Carbondale or

Charleston or Normal *this* fall began applying to those schools *last* fall. At the University of

Illinois Urbana-Champaign, for example, applications for the 2026-27 academic year were

accepted from September 2025 through early January 2026. Jones Declaration ¶ 6.

When prospective students apply for admission, Illinois universities don't only evaluate

their academic credentials; they also examine their qualifications for in-state tuition. Jones

Declaration ¶ 7. Universities make those in-state tuition determinations using the eligibility

criteria applicable to the academic year for which the applicant is seeking admission. *Id.* ¶ 8. So,

when the University of Illinois Urbana-Champaign reviewed the applications for the 2026-27

academic year that it received last fall and winter, it determined whether those prospective

students were eligible for in-state tuition using unamended 110 ILCS 305/7e-5(a-5). *Id.*

When applicants learn whether they have been admitted to an Illinois university, they also

learn whether they qualify for in-state tuition. Jones Declaration ¶ 9. Students then rely on those

tuition determinations to decide whether they can afford to enroll. *Id.* At this point in the process,

almost all those enrollment decisions have already been made. At the University of Illinois

Urbana-Champaign, for example, most admissions decisions—and in-state tuition determinations

under unamended 110 ILCS 305/7e-5(a-5)—were sent to applicants between December 2025

and March 2026. *Id.* ¶ 7. Admitted students were generally required to accept their offers by the

beginning of May 2026. *Id.* ¶ 10. Today, in the middle of June 2026, incoming freshmen have

turned down other schools, many have applied for campus housing, and more still are completing

---

[10] What follows describes the admissions cycle in general terms. Of course, with so many universities and community colleges in Illinois, some institutions operate differently than others. *E.g.*, Jones Declaration ¶ 6 (University of Illinois Springfield accepts applicants on a rolling basis through start of each semester).

placement tests and new student registration requirements. *Id.* ¶ 11. All this has been done in reliance on in-state tuition determinations made under unamended 110 ILCS 305/7e-5(a-5). And the university itself has relied on these students' anticipated enrollment to prepare (among other things) courses, housing, and advising services for the 2026-27 academic year. *Id.* ¶ 12.

Of course, tuition rates aren't the only information students rely on to determine whether they'll be able to afford higher education. Financial aid is another crucial consideration. Students in this state are fortunate to have access to financial resources administered by the Illinois Student Assistance Commission. Among the most important are Monetary Award Program grants, which are available to qualified applicants who, "in the absence of grant assistance, will be deterred by financial considerations from completing an educational program at the qualified institution of [their] choice." 110 ILCS 947/35(a)(3). Students who are eligible for in-state tuition are also eligible for these MAP grants (and other financial aid). 110 ILCS 986/10 & 15(a).

Almost nine months ago, in October 2025, prospective and returning students began applying for MAP grants to fund their studies in the 2026-27 academic year. Declaration of Eric Zarnikow ¶¶ 9, 14 ("Zarnikow Declaration") (attached). The Illinois Student Assistance Commission reviewed these applications on a "first come, first served" basis to determine MAP grant eligibility using the statutory requirements applicable to the 2026-27 academic year. *Id.* ¶¶ 6, 14-16, 18, 20(a). Students are encouraged to apply early because, although the legislature appropriated more than $720 million to fund MAP grants in the current fiscal year, the need is often greater yet. *Id.* ¶¶ 5, 13. This is why the Illinois Student Assistance Commission had to suspend MAP grant applications for the 2026-27 academic year in April 2026. *Id.* ¶¶ 10-11.

Community colleges and universities include MAP grants in the financial aid award package that admitted students receive alongside their letter of acceptance. Zarnikow Declaration

8

¶¶ 15-16. Most students awarded MAP grants in the 2026-27 academic year learned the good news sometime between late fall 2025 and spring 2026. *Id.* ¶ 18. And, of course, students rely on this information to determine which school (if any) they can afford to attend. *Id.* ¶ 16.

What does all this mean? On the one hand, the current (unamended) versions of 110 ILCS 305/7e-5(a-5), 110 ILCS 520/8d-5(a-5), 110 ILCS 660/5-88(a-5), 110 ILCS 665/10-88(a-5), 110 ILCS 675/20-88(a-5), 110 ILCS 680/25-88(a-5), and 110 ILCS 805/6-4a(a) will apply in the 2026-27 academic year. And the 2026-27 academic year won't start for another few months.

But this discussion establishes that almost all the work has already been done to implement these statutes for the 2026-27 academic year—the final year these statutes will be in effect. Students have been admitted. Grants have been awarded. Offers have been accepted. Parents are making plans to move their children into dorms. For almost a year now, students and institutions have relied on these statutes—in many cases to make life-altering decisions. And in a little while, when summer starts to wane, another class of high school seniors will turn their attention to the next admissions cycle—and Illinois community colleges and universities will begin implementing House Bill 5093's amendments to the challenged tuition statutes.

The bottom line is that "events" have "so overtake[n] [this] lawsuit that the anticipated benefits of a remedial decree no longer justify the trouble of deciding the case on the merits." *Winzler*, 681 F.3d at 1210. From an Article III standpoint, there may be "a flicker of life" left in these challenges to the tuition statutes applicable in the 2026-27 academic year. *Id.* But from a prudential standpoint, the federal government cannot expect the Court to devote resources to deciding the legality of statutes that, for all practical purposes, have already been implemented for the final time. *See Air Line Pilots*, 897 F.2d at 1396-97 ("relief" may be "withheld" if it would make "very little difference" to plaintiff). These claims are therefore prudentially moot.

9

**Equitable discretion.** If the Court reaches the merits and holds that the challenged statutes are preempted by 8 U.S.C. § 1623(a), House Bill 5093's enactment and the harm that would be caused by attempting to undo students' and institutions' reliance on the unamended tuition statutes to prepare for one last academic year, *see* Jones Declaration ¶ 13; Zarnikow Declaration ¶¶ 21-22, mean that the equities defendants previously urged the Court to consider, ECF 27 at 218-20, weigh undeniably in favor of declining to award (or staying) injunctive relief.

The Supreme Court has "recognized, in a number of contexts, the legitimacy of protecting reasonable reliance on prior law even when that requires allowing an unconstitutional statute to remain in effect for a limited period of time." *Heckler v. Mathews*, 465 U.S. 728, 746 (1984) (citing cases). "Especially when *immediate* implementation of an equitable remedy threatens to impinge upon the expectations of innocent parties, the courts must 'look to the practical realities and necessities inescapably involved in reconciling competing interests,' in order to determine the 'special blend of what is necessary, what is fair, and what is workable.'" *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 375 (1977) (emphasis added); *see, e.g.*, *Texas v. United States*, 50 F.4th 498, 531 (5th Cir. 2022) (staying DACA injunction due to "profound significance to recipients and many others in the ten years since its adoption" and "'uncertainty of final disposition'"). Here, the challenged in-state tuition statutes have been in effect for far longer than DACA: they date back almost a quarter of a century.

And the people who will be harmed the most by an immediately effective injunction are young students who are in this country through no fault of their own and only wish to obtain an education to benefit themselves and their communities. *See Department of Homeland Security v. Regents of the University of California*, 591 U.S. 1, 29 (2020); *Plyler v. Doe*, 457 U.S. 202, 221 (1982). If there was ever a case that cried out for equity's defining quality of mercy, it is this one.

10

Dated: June 16, 2026

Respectfully submitted,

/s/ Darren Kinkead
Darren Kinkead
Aleeza Strubel
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, IL 60603
(773) 590-6967
Darren.Kinkead@ilag.gov